# United States Court of Appeals for the Federal Circuit

---

**DAREK J. KITLINSKI,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2016-1498

---

Petition for review of the Merit Systems Protection Board in No. SF-4324-15-0088-I-1.

---

Decided: May 31, 2017

---

KEVIN EDWARD BYRNES, The Law Offices of Kevin E. Byrnes, PLLC, Washington, DC, argued for petitioner.

STEPHEN FUNG, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, argued for respondent. Also represented by BRYAN G. POLISUK.

---

Before DYK, BRYSON, and CHEN, *Circuit Judges.*

BRYSON, *Circuit Judge.*

Petitioner Darek J. Kitlinski appeals from a decision of the Merit Systems Protection Board dismissing various

claims he raised under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301-35. We affirm the Board's final order in part, but vacate and remand for further proceedings on Mr. Kitlinski's claim of a hostile work environment based on reprisal for his protected activity under USERRA.

I

During the period at issue in this case, Mr. Kitlinski was employed by the Drug Enforcement Administration ("DEA"), an agency within the U.S. Department of Justice. He was assigned to the DEA's field office in San Diego. At the same time, Mr. Kitlinski served as a reservist in the United States Coast Guard. In 2011, he was recalled to active duty in the Coast Guard, and for an extended period he served full-time at the Coast Guard headquarters in Washington, D.C.

Mr. Kitlinski has had several run-ins with the DEA. At the time of the events at issue in this case, Mr. Kitlinski had two USERRA complaints and an equal employment opportunity ("EEO") complaint pending against that agency. His USERRA complaints were based on the DEA's responses to his requests to be transferred from the DEA's San Diego field office to either the Washington, D.C., field office or DEA headquarters in Arlington, Virginia, where Mr. Kitlinski's wife worked. His EEO complaint alleged that the agency had unreasonably denied his request for a transfer and had failed to select him for two positions in DEA's Washington, D.C., Division. He alleged that the denial of his transfer request and his non-selection for the two Washington positions was the product of sex discrimination.

On September 23, 2014, DEA representatives took Mr. Kitlinski's deposition in the pending EEO litigation. The deposition took place at the DEA headquarters. After Mr. Kitlinski finished his deposition and returned to his car, which was parked in a secure DEA parking lot, he

discovered a Blackberry device bearing a DEA sticker under the hood of the car. He suspected that the device had been planted by agency officials while the car was parked in the DEA parking lot during his deposition, and that the device was intended to be used to track his location and record his conversations.

Mr. Kitlinski reported his discovery of the Blackberry device to the Federal Bureau of Investigation and to the Department of Justice Office of the Inspector General. That office referred the case to the DEA Office of Professional Responsibility ("OPR"). Mr. Kitlinski's wife also reported the incident to her supervisors and to the OPR.

In response to Mrs. Kitlinski's complaint, an OPR investigator contacted Mrs. Kitlinski and directed her to turn over the Blackberry and to appear at the OPR offices for an interview. Mrs. Kitlinski advised the OPR investigator that she had given the Blackberry to her lawyer and that all further communications with her should be directed through the lawyer. She later stated that when she appeared at the OPR offices, she was interrogated and was threatened with discipline if she did not turn over the Blackberry.

The following month, two OPR investigators traveled to Mr. Kitlinski's workplace at the Coast Guard headquarters to meet with him. They directed him to turn over the Blackberry and to come to the OPR offices the following day to be interviewed.

Prior to that encounter, but after the investigators' meeting with Mr. Kitlinski's wife, Mr. Kitlinski filed the present action with the Merit Systems Protection Board. In his complaint, Mr. Kitlinski claimed that the placement of the Blackberry and the interview of his wife constituted violations of USERRA as independent acts of discrimination and by creating a hostile work environment. Following the appearance of the two OPR investigators at Mr. Kitlinski's workplace, Mr. Kitlinski

submitted an additional pleading in which he claimed that the investigators' actions constituted individual acts of retaliation as well as creating a hostile work environment in retaliation for his exercise of his rights under USERRA.

The administrative judge who was assigned to the case issued an order directing the parties to file statements regarding the Board's jurisdiction. Mr. Kitlinski filed a statement contending that the Board had jurisdiction over his USERRA claims and requesting a hearing. The agency filed a response in which it urged the administrative judge to dismiss Mr. Kitlinski's complaint for lack of jurisdiction, to which Mr. Kitlinski filed a reply.

In early 2015, the administrative judge issued a ruling dismissing the complaint for lack of jurisdiction. The administrative judge held that Mr. Kitlinski had failed to show that the Board had jurisdiction over his complaint because he had failed to make a nonfrivolous allegation that any of his claims gave rise to a USERRA violation.

The administrative judge first addressed Mr. Kitlinski's claim that the alleged placement of the Blackberry in his car constituted the denial of a "benefit of employment" on account of his military service, in violation of section 4311(a), the anti-discrimination provision of USERRA, 38 U.S.C. § 4311(a). The administrative judge noted that the term "benefit of employment" in section 4311(a) is defined in relevant part as the "terms, conditions, or privileges of employment." 38 U.S.C. § 4303(2). Taking Mr. Kitlinski's claim "at face value," the administrative judge explained that "his contentions boil down to a claim that some unknown DEA employee placed a Blackberry device in the engine compartment of his personal vehicle on the morning of September 23, 2014, where it remained until around 1:00 p.m. when he removed and effectively disabled it." Under those circumstances, the administrative judge concluded, Mr. Kitlinski "failed to nonfrivolously

allege that the purported placement of a Blackberry device in the engine compartment of his personal vehicle for a period of hours constituted a denial of any benefit of employment as it did not affect any term, condition or privilege of employment."

The administrative judge then turned to Mr. Kitlinski's claim that the DEA's alleged placement of the Blackberry device in his car constituted an act of retaliation for his prior pursuit of a USERRA claim, in violation of the anti-retaliation provision of USERRA, 38 U.S.C. § 4311(b). That provision states that an employer "may not discriminate in employment against or take any adverse employment action against any person" because that person has taken action to enforce a right afforded by the USERRA statute.

The administrative judge found that Mr. Kitlinski had failed to nonfrivolously allege that the Blackberry incident constituted either an adverse employment action or discrimination in employment. The administrative judge pointed out that there was no evidence that Mr. Kitlinski's employment status with the DEA, and in particular his extended leave to allow him to serve on active duty, was in any way affected by the incident, or that the DEA took any adverse employment action against him.

The administrative judge next turned to Mr. Kitlinski's claim that the DEA's investigation of the Blackberry incident constituted an act of retaliation for his USERRA activities. The administrative judge noted that an investigation "is not a personnel action per se," and that even if an agency investigation without an accompanying personnel action could constitute a potential act of retaliation under USERRA, "the undisputed facts here would undermine such a claim," as it was Mr. Kitlinski "and his wife who sought to have the matter investigated."

As for the OPR investigators' meeting with Mr. Kitlinski at the Coast Guard headquarters, the adminis-

trative judge found that the investigators were authorized to require DEA employees to respond to material and relevant questions and to produce or grant access to government property, and that DEA employees are required to respond to questions in such investigative proceedings. Moreover, the administrative judge noted, Mr. Kitlinski declined to appear at the interview or turn over the Blackberry, so the interruption of his work with the Coast Guard was limited to the brief meeting with the OPR investigators at the Coast Guard headquarters. Consequently, the administrative judge found that the actions alleged by Mr. Kitlinski in connection with the DEA investigation of the Blackberry incident were not materially adverse. For that reason, the administrative judge found that Mr. Kitlinski had "failed to nonfrivolously allege that the agency conducted its investigation in such a manner so as to support a claim that it was done in retaliation for the appellant having previously pursued his rights pursuant to USERRA."

The administrative judge next addressed Mr. Kitlinski's claim that the agency's actions created an actionable "hostile work environment" based on reprisal under USERRA. As to that issue, the administrative judge acknowledged that USERRA protects the right to be free from a hostile work environment based on military service and assumed that the prohibition against retaliation in section 4311(b) would include hostile work environment claims. Nonetheless, the administrative judge found that the agency conduct at issue was confined to two incidents—the Blackberry incident and the ensuing investigation—and that the consequences of the two incidents were not severe. The Blackberry was present in Mr. Kitlinski's vehicle only for a short period of time—and only when Mr. Kitlinski was alone in the car—before he discovered it. And as for the investigation, the administrative judge noted that it had been precipitated by the Kitlinskis' complaints and had not involved any humiliat-

ing or physically threatening conduct. The administrative judge further found that the agency's alleged harassment did not interfere with Mr. Kitlinski's work for the DEA, nor did the brief meeting with the OPR investigators at the Coast Guard headquarters interfere unreasonably with Mr. Kitlinski's work while on active duty with the Coast Guard or otherwise rise to the level of actionable harassment.

Based on that analysis, the administrative judge found that Mr. Kitlinski had failed to make a nonfrivolous allegation (1) that he was subjected to the denial of a benefit of employment under section 4311(a) based on his military service; (2) that the DEA took an adverse employment action or otherwise discriminated in employment against him under section 4311(b) for engaging in protected USERRA activity; and (3) that he was subjected to a hostile work environment or actionable harassment under either sections 4311(a) or 4311(b).

Mr. Kitlinski petitioned the full Board for review of the administrative judge's decision. On review, the Board upheld the dismissal of Mr. Kitlinski's claims, although it modified the administrative judge's initial decision in one respect.

The Board first agreed with the administrative judge that, even accepting Mr. Kitlinski's version of the facts, the Blackberry incident did not deny him a benefit of employment and therefore did not constitute discrimination under USERRA.

Second, the Board held that Mr. Kitlinski had failed to nonfrivolously allege that the DEA's conduct had created a hostile work environment in violation of USERRA's anti-discrimination provision. On that issue, the Board's analysis differed from that of the administrative judge. The Board ruled that the flaw in Mr. Kitlinski's case was his failure to show that the measures alleged to have given rise to the hostile work environment

were taken based on Mr. Kitlinski's military status, which is a necessary element of a discrimination claim under USERRA section 4311(a).

Third, the Board held that Mr. Kitlinski had failed to make a nonfrivolous allegation that the agency had retaliated against him for previous USERRA activity. On that issue, the Board agreed with the administrative judge that USERRA's anti-retaliation provision, section 4311(b), requires proof that the employer's allegedly retaliatory measures constituted "discrimination in employment" or "an adverse employment action." Because the Board concluded that the Blackberry incident and the subsequent OPR investigation did not constitute either an adverse employment action or discrimination in employment, it held that it lacked jurisdiction over Mr. Kitlinski's retaliation claim.

Although the Board addressed Mr. Kitlinski's claim of discrimination based on a hostile work environment as well as his claim of retaliation based on the Blackberry incident and the OPR investigation, it did not make a separate finding as to Mr. Kitlinski's claim that the DEA had created a hostile work environment in retaliation for his USERRA activities.

II

In this court, the Board's counsel acknowledges that the full Board did not address Mr. Kitlinski's claim of retaliation in the form of a hostile work environment. The Board's counsel asks us to remand that portion of the case to the Board in order for the Board to address and decide that issue in the first instance. The Board's counsel defends the Board's decisions with respect to each of Mr. Kitlinski's other three claims. We address those three claims below.

1. The anti-discrimination provision of USERRA, 38 U.S.C. § 4311(a), states that a person who is a member of

a uniformed service shall not be denied "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" on the basis of his membership in the military or performance of military service. A person claiming discrimination by a federal executive agency in violation of section 4311(a) of USERRA may choose to submit a complaint directly to the Merit Systems Protection Board. 38 U.S.C. § 4324(b).[1] In order to establish that the Merit Systems Protection Board has jurisdiction over a USERRA discrimination claim, the appellant must make a non-frivolous allegation that his military service was "a substantial or motivating factor" in the agency's action in question. *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *Lourens v. Merit Sys. Prot. Bd.*, 193 F.3d 1369, 1370 (Fed. Cir. 1999); *see also* 38 U.S.C. § 4311(c); *Wilborn v. Merit Sys. Prot. Bd.*, No. 2016-2533, 2017 WL 930807, at *2 (Fed. Cir. Mar. 9, 2017); *Baney v. Merit Sys. Prot. Bd.*, 415 F. App'x 244, 246 (Fed. Cir. 2011).

Mr. Kitlinski's first claim is that the DEA discriminated against him in violation of USERRA section 4311(a) because of his military service. The problem with that claim, as the Board held, is that the agency's actions do not fit within the categories of actions that section 4311(a)

---

[1] As an alternative to a direct complaint to the Board, an employee may elect to apply to the Secretary of Labor for assistance with his discrimination claim. *See* 38 U.S.C. § 4322(a). The Secretary may attempt to resolve the matter or refer it to the Office of Special Counsel, which may assist the employee with his complaint before the Board. *See* 38 U.S.C. §§ 4322(d), 4324(a). Mr. Kitlinski did not elect that option, but filed his complaint directly with the Board.

prohibits an agency from taking, i.e., the denial of "initial employment, reemployment, retention in employment, promotion, or any benefit of employment."

The only one of those prohibitions that Mr. Kitlinski argues is applicable in this case is the denial of a "benefit of employment." We agree with the Board, however, that the agency's alleged placement of the Blackberry in Mr. Kitlinski's car did not constitute the denial of a "benefit of employment" within the meaning of section 4311(a) of USERRA. This court has held that "a nexus between an allegedly-denied benefit and one's employment is an essential component of this type of USERRA claim." *Thomsen v. Dep't of the Treasury*, 169 F.3d 1378, 1381 (Fed. Cir. 1999). It would stretch the term "benefit of employment" far beyond its reasonable limits to construe it to mean freedom from any improper or unlawful acts committed by any representative of an employer outside the workplace, such as the alleged placement of a Blackberry in Mr. Kitlinski's vehicle while he was present at the DEA headquarters for a deposition.[2]

---

[2]   Mr. Kitlinski cites several cases in which excessive monitoring of an employee was asserted as a basis for a claim of retaliation or a hostile work environment under other statutes. Those cases involved extended periods of monitoring in the workplace, quite different from the single instance of monitoring outside of the workplace that is alleged in this case.

In his petition for review to the full Board, Mr. Kitlinski was critical of the administrative judge's characterization of the alleged placement of the Blackberry as lasting only a few hours on the morning of Mr. Kitlinski's deposition. Appellant's Petition for Review at 10. In his narrative attachment to his complaint, however, Mr. Kitlinski specifically asserted that the "placement of the listening and tracking device occurred on the very day I was de-

Similarly, the investigative measures taken by the OPR investigators cannot reasonably be characterized as the denial of a benefit of employment. While Mr. Kitlinski objects to the steps taken by the OPR investigators, including meeting Mr. Kitlinski at the Coast Guard headquarters and insisting that he produce the Blackberry and appear for an interview at the DEA headquarters the next day, those actions did not deny Mr. Kitlinski a benefit of employment under any reasonable definition of that term. That conclusion is confirmed by section 4303(2) of USERRA, which defines the term "benefit of employment" to mean the "terms, conditions, or privileges of employment" and benefits flowing therefrom.

Mr. Kitlinski argues that the purpose of the Blackberry incident was to enable the DEA to obtain information to use in the legal proceedings he had brought against the agency, including his two prior USERRA claims. That contention, even if true, would not make freedom from monitoring outside the workplace a "benefit of employment" within the meaning of USERRA. The Board therefore correctly held that Mr. Kitlinski failed to make a nonfrivolous allegation of acts of USERRA discrimination under section 4311(a) based on the Blackberry incident and the OPR investigation.

2. Mr. Kitlinski's second claim is that the combination of the Blackberry incident and the DEA's subsequent investigation of that incident created a hostile work environment. He argues on appeal that the creation of a hostile work environment constituted discrimination based on his military service, in violation of USERRA section 4311(a), because it was motivated by anti-military

---

posed by the Agency," e-Appeal Attachment Transmittal at 6-7; *see also id.* at 3. It was therefore entirely reasonable for the administrative judge to accept Mr. Kitlinski's factual proffer on that issue as true.

animus. That claim, too, was properly rejected. As the Board observed, Mr. Kitlinski did not allege before the Board that the DEA created a hostile work environment because of his military service. Nor has Mr. Kitlinski pointed to any evidence of such a motivation.

In his brief, Mr. Kitlinski alludes to an attachment to his petition for review by the full Board, which he characterizes as reciting the "long standing number of disputes with the DEA," and detailing "repeated act[s] of discriminatory animus, denials of promotions and transfers, inaccurate responses to pointed Congressional inquiries, anti-military comments by the DEA Career Board, conflicting Agency explanations for its conduct and years long contests between Petitioner and the Agency over personnel actions taken or not taken." But a document describing Mr. Kitlinski's clashes with the agency is no substitute for an allegation of anti-military animus as the basis for creating a hostile work environment. The discrimination claim in the form of a hostile work environment based on military status therefore fails on that ground.

3. Mr. Kitlinski's third claim is that the Blackberry incident and the subsequent OPR investigation constituted individual acts of retaliation against him because of his prior invocation of his rights under USERRA, and that those acts therefore violated section 4311(b), USERRA's anti-retaliation provision. The Board held that Mr. Kitlinski failed to make a nonfrivolous allegation that either the Blackberry incident or the subsequent investigation qualified as an individual act of retaliation for his previous USERRA activities, and we agree.

USERRA's prohibition against retaliation in section 4311(b) provides that an employer "may not discriminate in employment against or take any adverse employment action against any person" because he has taken an action to enforce a protection provided by USERRA or has exer-

cised a right provided for by USERRA. 38 U.S.C. § 4311(b). Thus, the anti-reprisal statute is limited to barring acts of discrimination in employment and adverse employment actions. *See Lisdahl v. Mayo Found.*, 633 F.3d 712, 721 (8th Cir. 2011); *Crews v. City of Mt. Vernon*, 567 F.3d 860 (7th Cir. 2009).[3]

As the Board held, the Blackberry incident and the investigation that followed it do not constitute acts of "discrimination in employment" or "adverse employment actions." With respect to "discrimination in employment," the placement of a Blackberry in Mr. Kitlinski's car, as the Board found, "does not deny him a benefit that inures to him by virtue of his employment with the agency." Nor does that act constitute an "adverse employment action," which is generally defined to include actions adversely affecting the employee's employment status, such as firing, demotion, suspension, a loss of benefits, or a reduction in pay.

Similarly, as the Board ruled, an investigation does not ordinarily constitute an act of "discrimination in employment" or an "adverse employment action." That is particularly clear in this case, as the investigation did not relate directly to Mr. Kitlinski's employment with the DEA. As the administrative judge pointed out, Mr. Kitlinski had been on long-term leave from the DEA while he served with the Coast Guard, and the investigation related to an incident that occurred at the time of his deposition in his EEO case against the agency. The

---

[3] As the *Crews* court explained, the language of the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) does not contain the limiting language found in section 4311(b) of USERRA; for that reason the anti-retaliation provision of Title VII has not been limited to employment-related actions. *Crews*, 567 F.3d at 869.

investigation thus had no apparent effect on his employment with the DEA and did not constitute discrimination in employment or an adverse employment action. We therefore sustain the Board's ruling that Mr. Kitlinski failed to make a nonfrivolous allegation that the discrete actions about which he complains—the Blackberry incident and the investigative activities that followed—violated USERRA's anti-retaliation provision.

4. As noted, the full Board did not address one of Mr. Kitlinski's claims: that the creation of a hostile work environment was the product of forbidden retaliation under section 4311(b), the anti-retaliation provision of USERRA. The Board's counsel has requested that we remand the case to the Board to address that issue in the first instance. We grant the request of the Board's counsel. Therefore, while we uphold the Board's decision with respect to the three claims that the Board addressed, we vacate the Board's order and remand the case to the Board in order to enable the Board to address the issue that was left unaddressed in the initial petition for review proceeding.

Each party shall bear its own costs for this appeal.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**